IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**NATHAN TROY OTTO,**

       **Petitioner,**

   v.          CASE NO. 06-3269-RDR

**COMMANDANT U.S.D.B.,**
**COLONEL INCH,**
       **Respondent.**

## O R D E R

   This petition for writ of habeas corpus, 28 U.S.C. § 2241, was filed by Mr. Otto while he was confined at the United States Disciplinary Barracks, Fort Leavenworth, Kansas (USDB).  He has since been transferred to the United States Penitentiary at Terre Haute, Indiana.  Petitioner alleged he had exhausted all military remedies on his claims, and this court issued an Order to Show Cause.  Respondents filed an Answer and Return together with relevant portions of the record, and petitioner filed a Traverse. Having considered all pleadings and exhibits filed, the court finds as follows.

**CLAIMS**

   Petitioner claims he was denied full and fair military appellate review of his conviction.  In support of this claim, he alleges: (1) the lower military appellate court denied his due process right to timely appellate review by its unreasonable delay in rendering its decision and because it plagiarized the government's brief instead of conducting a proper Article 66(c)

review; (2) the record of trial was incomplete as required by CMR 1103(b)(2)(B); (3) the Staff Judge Advocate (SJA) ignored petitioner's claim of an incomplete record; and (4) the higher military appellate court affirmed without a hearing and without issuing a written opinion analyzing and answering the legal questions presented.

Petitioner also claims the military judge erred in accepting the pretrial agreement in his case because it contained a provision requiring that he waive his pending motion to suppress. He asserts that the blanket provision requiring waiver of all pretrial motions violated public policy and voided the pretrial agreement. He further asserts that his motion to suppress equated to a deprivation of his Sixth Amendment right to counsel and therefore its waiver was prohibited by Rule 705 of the Rules for Courts-Martial (RCM 705).

**FACTUAL AND PROCEDURAL BACKGROUND**

A summary of the Stipulation of Fact which was part of Mr. Otto's pre-trial agreement, provides a factual background. A&R (Doc. 7) Exhib. 20 at 158. Mr. Otto enlisted in the Marine Corps in 1996. During January, 1998, he agreed with Mr. Marner, a civilian friend from his home town in Indiana, to acquire and sell methamphetamine (meth). Several drug transactions transpired as a result. During April 1998, Mr. Marner traveled with Mr. Stoll from Indiana to Los Angeles by car to purchase two pounds of meth with over $10,000 cash, half of which belonged to Mr. Otto. During the trip Mr. Marner and Mr. Stoll also carried injectable meth for

2

personal use.  Marner and Stoll were arrested on April 5, 1998, in Oklahoma.  Both made incriminating statements regarding Mr. Otto.

Mr. Otto also agreed in 1998 to distribute meth with Mr. Host, a former member of his unit, who was involved in drug transportation and sale between Los Angeles and Cleveland.  Host introduced Otto to Mr. Rios, a resident of Los Angeles, who thereafter regularly provided them with meth to sell.  During June, 1998, Host introduced Otto to Mr. Jarvis, and all agreed Jarvis would carry meth from Los Angeles to Indiana to sell.  Over the next month or two Jarvis transported meth provided by Otto and Rios in and out of Los Angeles through the airport (LAX).  On August 12, 1998, Jarvis was changing flights in Las Vegas with meth he had received from Rios in Los Angeles, when he was arrested by narcotics agents.  After being caught in possession, Jarvis provided information about Otto to Drug Enforcement Agency (DEA) agents.  A DEA agent then notified Naval Criminal Investigative Service (NCIS) that Otto had been implicated in the sale of narcotics.  A separate NCIS investigation of Otto had been ongoing since April, 1998, and had already identified him as a drug suspect.

In May, 1998, Otto discussed transporting meth with Lance Corporal Moore, who turned out to be an NCIS cooperating witness.  The two agreed Moore would transport meth to Chicago for sale.  Moore also gave Otto's name to the NCIS in connection with narcotics possession and use.  In cooperation with the NCIS, Moore was in contact with Otto on August 21 and 31, 1998, to set up a one-pound drug buy.  On September 1, 1998, Otto was arrested in Indiana and

charged with possession of marijuana and amphetamine.  The warrant to search his trailer home in Odon, Indiana, was based upon the information provided by Jarvis to DEA agents in Nevada.  NCIS became aware on September 3, 1998, of Otto's arrest in Indiana by local authorities.

On September 28, 1998, Gregory Smith of the Davies County Public Defender's Office was assigned as Mr. Otto's defense counsel. Id., Exhibit 21 at 170, 177.  While Otto was in pretrial confinement in the Davies County Jail in Washington, Indiana, he sent at least two letters to Moore, and conversed with him by telephone.  In a letter sent October 7, 1998, Otto instructed Moore to pick up one pound of meth that would be placed in a car in El Toro, California, by his supplier Rios, and to place $20,000 in the car within four weeks of the pick-up.  Moore left phone messages for Otto at the county jail.

Otto also communicated from the jail by mail and telephone with Rios to set up the El Toro transaction.  In addition, Otto requested in a letter that Rios find someone to kill Jarvis in the Las Vegas jail, after learning that Jarvis had provided the information leading to the search of his home and his arrest.  Rios then received money, which he used to purchase one pound of narcotic. Rios was arrested by state and federal narcotics agents on October 26, 1998, with the drug in his possession.

On August 26, 1999, Mr. Otto was tried and convicted of several charges by general court-martial, military judge alone, at Marine Corps Air Station, Miramar, California.  The military judge accepted

4

petitioner's guilty pleas to conspiracy to possess and distribute methamphetamine, wrongful use and distribution of methamphetamine, unauthorized absence, escape from confinement, communicating a threat to a witness to influence testimony, and solicitation to commit murder, and sentenced him to imprisonment for 35 years.

A military sentence does not become effective until approved by the Convening Authority upon its review of the record. There was an unexplained delay of eight months between sentencing and authentication of the record on May 16, 2000. Neither petitioner nor his counsel objected to this delay at the time. On July 20, 2000, the Convening Authority substantially approved the findings and, in accordance with the plea agreement, suspended all confinement in excess of 240 months.

Petitioner appealed his convictions and sentence; and on April 29, 2003, the United States Navy-Marine Court of Criminal Appeals (NMCCA) affirmed the findings and sentence in an unpublished opinion[1]. Petitioner appealed to the United States Court of Appeals for the Armed Forces (CAAF), which granted review upon one issue only. The CAAF then set aside the NMCCA decision on that issue, finding the lower court's "verbatim replication of substantial portions of the Government's Answer Brief" as its opinion violated recent military case law and required remand for a new "66(c) review."

---

[1] Petitioner presented five claims to the NMCCA: (1) the pretrial agreement violated public policy, (2) denial of speedy post-trial processing, (3) the sentence was inappropriately severe, (4) the fine enforcement provision of the pretrial agreement should be set aside, and (5) denial of access to a law library. The fine enforcement provision was stricken.

5

The NMCCA conducted a second review addressing the same assignments of error, and affirmed in another unpublished opinion on September 26, 2005.  On November 30, 2005, Mr. Otto again petitioned the CAAF for review.  On January 31, 2006, he filed his supplement to his petition for review seeking consideration of two issues: that his pretrial agreement violated RCM 705, public policy, and his right to counsel, and that the remand resulted in delay that violated due process.  On June 22, 2006, the CAAF granted the petition for review and at the same time summarily affirmed the decision of the NMCCA.

Also on June 22, 2006, counsel for Mr. Otto filed a "Motion for Leave to File a Supplement to his Supplement for a Petition for Grant of Review," which was not timely.  Therein, he asked the CAAF to review two additional Grostefon[2] issues he had not presented to the NMCCA: that the record of trial was not verbatim, and that the SJA had failed to respond to his allegation of legal error.  On June 30, 2006, Mr. Otto filed a Petition for Reconsideration also asserting these two additional issues[3].  On July 19, 2006, the CAAF denied Otto's Petition for Reconsideration.

**LEGAL STANDARDS**

---

[2]   These are issues personally raised by the petitioner, which counsel is required to present under United States v. Grostefon, 12 M.J. 431 (CMA 1982).

[3]   The Government argued then, as respondent argues now, that petitioner waived these issues by not raising them during his Article 66 review before the NMCCA.

6

A federal court is limited[4] in its habeas corpus review of military court-martial proceedings. The scope of review is initially limited to determining whether the claims raised by a petitioner were given full and fair consideration by the military courts. Lips, 997 F.2d at 810 ; Burns v. Wilson, 346 U.S. 137, 144 (1953). If the issues have been given full and fair consideration, the district court should deny the petition. Lips, 997 F.2d at 810. If an issue was "briefed and argued" before a military court and disposed of, "even summarily," the federal habeas court will find that the claim was given full and fair consideration. Watson v. McCotter, 782 F.2d 143, 145 (10th Cir.) cert denied, 476 U.S. 1184 (1986); Lips, 997 F.2d at 812, FN2. The fact that the military court did not specifically address the issue in a written opinion is not controlling. Id. The burden is on the petitioner to show that the military review was "legally inadequate" to resolve his claims. Watson, 782 F.2d at 144, *citing* Burns, 346 U.S. at 146. Furthermore, a federal habeas court will not review claims that were not raised before the military courts, Watson, 782 F.2d at 145, unless the petitioner shows both cause excusing the procedural default and actual prejudice resulting from the error. Lips, 997 F.2d at 812; Wolff v. United States, 737 F.2d 877 (10th Cir.), cert. denied, 469 U.S. 1076 (1984). Additionally, the Tenth Circuit Court

---

[4] District court review is limited because "the military has its own independent criminal justice system governed by the Uniform Code of Military Justice." Lips v. Commandant, United States Disciplinary Barracks, 997 F.2d 808, 810 (10th Cir.), cert, denied, 510 U.S. 1091 (1993). The code is "all-inclusive and provides, *inter alia*, for courts-martial, appellate review, and limited certiorari review by the United States Supreme Court." Id.

7

of Appeals has adopted four factors to be used "for guidance in determining when to review a claim made in a habeas corpus petition" filed by a military prisoner: (1) the alleged error must present a significant constitutional question; (2) the issue must be one of law rather than of fact already determined by the court-martial; (3) unique military considerations may warrant different treatment of a constitutional issue; and (4) whether the military courts applied the correct legal standards and gave appropriate consideration to the claims.  Roberts v. Callahan, 321 F.3d 994, 996 (10th Cir. 2003), *citing* Dodson v. Zelez, 917 F.2d 1250, 1252-53 (10th Cir. 1990) and Lips 997 F.2d at 811.  The court has reviewed petitioner's claims under these standards.

**DISCUSSION**

**DENIAL OF FULL AND FAIR POST-TRIAL REVIEW CLAIM**

Petitioner claims that the post-trial processing and appeal of his case to the NMCCA denied his right to a timely appeal.  In support, he alleges the NMCCA took 2,223 days from the time of conviction until a decision was rendered.  Petitioner presented the claim of denial of a timely appeal to the military courts.  On his first and second appeals to the NMCCA, he claimed he was denied speedy post-trial review based upon the eight-month delay between sentencing and authentication of the record.

"A military appellant's 'right to a full and fair review of his findings and sentence under Article 66 embodies a concomitant right

8

to have that review conducted in a timely fashion'." Toohey v. U.S., 60 M.J. 100, 102 (CAAF 2004). A "constitutional right to a timely review" is also guaranteed by the Due Process Clause. Id. In its second opinion on the issue, the NMCCA employed four factors from United States v. Jones, 61 M.J. 80, 83 (CAAF 2005)[5], to determine whether the delay in Mr. Otto's case violated due process: (1) the length of the delay, (2) the reasons for the delay, (3) the appellant's assertion of the right to a timely appeal, and (4) prejudice to the appellant. United States v. Otto, 2005 WL 2467765 (NMCCA, Sept. 26, 2005, unpublished), A&R (Doc. 7) Exhib. 9, at 68. They then found:

> The appellant's case involves multiple guilty pleas and sentencing on 26 August 1999, resulting in a 175-page record of trial that was prepared for authentication on 24 April 2000 and finally authenticated on 16 May 2000. There is no Government explanation for the 8-month delay between sentencing and authentication. We find that the unexplained delay alone is facially unreasonable, triggering a due process review. Since there is no explanation for the delay in the record, we look to the third and fourth Jones factors. We do not find an assertion of the right to a timely appeal by the appellant, nor do we find any claim or evidence of prejudice to the appellant. While we do not condone the unexplained delay in this case, we conclude that there has been no due process violation resulting from the post-trial delay.

Id. at 68-69. The CAAF summarily affirmed this decision.

It is plainly evident from the foregoing that the military courts fully considered petitioner's claim based upon the eight-month delay to authentication, and fairly applied appropriate legal

---

[5] These factors were derived by federal courts from the Supreme Court's speedy trial analysis in Barker v. Wingo, 407 U.S. 514 (1972). Toohey, 60 M.J. at 102.

9

standards.  The court thus concludes petitioner is not entitled to further review by this court on the basis of delay in authentication of the record.

In his first appeal to the CAAF, Mr. Otto sought review of the denial of his authentication delay claim but also challenged the first opinion of the NMCCA as "plagiarized."  The CAAF granted relief on his plagiarism claim by setting aside the NMCCA's first opinion and ordering a new Article 66(c) review.  Upon remand, the NMCCA entered its second, corrected opinion, and petitioner again appealed to the CAAF.  In his second timely Petition for Grant of Review he added to his claim of denial of speedy post-trial review, the time it had taken for the remand and new review.  He thus asserted the time from September 30, 2004, when the "plagiarized" NMCCA decision was set aside, to September 26, 2005, when the second opinion was issued by the NMCCA, was additional unlawful delay.

It clearly appears from exhibited portions of the record that the facts and arguments regarding these delays were fully briefed to the CAAF on petitioner's second CAAF appeal.  As respondent points out, petitioner's appellate defense counsel in his second Supplement to Petition for Grant of Review submitted a detailed brief on the claim that petitioner was denied due process by the NMCCA's plagiarism due to the additional time it took for the remand process.  The record shows the remand of petitioner's case was ordered fifteen months after he first sought review by the CAAF.  Nine months including three defense enlargements later, appellate defense counsel submitted the case to the NMCCA for the new review

10

with no new issues identified. The NMCCA issued their second opinion in less than six weeks. This chronology of time and events was set forth in briefs to the CAAF. The CAAF thereafter granted the Petition for Review and summarily affirmed the NMCCA. The court concludes that this claim was fully and fairly considered by the military courts, and may not be considered further by this court.

Moreover, if this court were to consider petitioner's claims regarding post-trial delay, it would find no legal merit. The remand was appropriate relief sought by Mr. Otto and granted to provide him with fair and adequate post-trial review. The time it took for the remand is not shown to have been inordinate. A remand under such circumstances should be viewed as an acceptable, rather than an unnecessary, reason for delay[6]. In addition, neither the time periods between each other step of military appellate proceedings nor the total time before there was an initial decision by the NMCCA[7] was so excessive or inordinate as to be presumptively prejudicial. Cf. Harris v. Champion, 15 F.3d 1538, 1555-56 (10th Cir. 1994). Furthermore, petitioner did not object to the delay. Nor has he ever alleged facts, such as oppressive incarceration pending appeal or impairment of grounds for appeal, showing actual

---

[6] Petitioner continues to complain of the NMCCA's "plagiarized" opinion as a violation of due process. This claim was remedied by the CAAF's order of remand.

[7] The court notes that petitioner, in his supplement to his second petition for review to the CAAF, stated that his case was docketed with the NMCCA on September 22, 2000, and the defense brief was filed on June 27, 2002. The Government answered on January 10, 2003, and the court decided the case on April 29, 2003. Thus, a substantial portion of the delay after docketing was for submission of petitioner's brief.

11

prejudice to him from any delay.  Id. at 1559.

The court further finds that petitioner does not suggest any different legal standards which should have been applied to this claim and, in fact, cited the same standards in his brief as were applied by the NMCCA.  The issue of unreasonable delay involves fact, as well as legal, questions and thus fails to satisfy two of the Dodson factors for review.

Petitioner next claims he is entitled to relief from his military convictions because the trial record is incomplete.  In support, he alleges the record does not include a verbatim transcript of Defense Exhibit C, a videotape prepared for sentencing; and investigative exhibits from the second Article 32 investigation, namely I.E. 8, a videotape of the news account of Otto's arrest after his escape from pretrial confinement.

Petitioner did not present this claim to the NMCCA or in either his first or second Supplement to Petition for Grant of Review to the CAAF.  He first attempted to raise it as an additional Grostefon issue by "Motion for Leave to File a Supplement to his Supplement for a Petition for Grant of Review" filed the very day his second Petition for Review was granted and relief denied[8].  Petitioner then raised this same issue in a "Petition for Reconsideration" filed June 30, 2006, which the CAAF denied on July 19, 2006.

Respondent argues that petitioner did not timely present this

---

[8]  Respondent shows that this motion was filed six months past the time limit for petitioner to submit matters to the CAAF for review, set in Rule 19 of the Court of Appeals for the Armed Forces Rules of Practice and Procedure, 10 U.S.C. § 867.

12

ground for relief to the military courts[9], and correctly asserts that grounds not properly presented to the military courts may not be considered by this court.  See Watson, 782 F.2d at 145. Petitioner has not, in his Traverse, alleged facts to counter this argument.  The record supports respondent's assertion and shows this claim was not presented to the NMCCA or in a timely manner to the CAAF.  Just as in those cases in which a state prisoner has failed to exhaust or has procedurally defaulted his claim, a habeas petitioner who has failed to meet the military's procedural requirements for presenting a claim has deprived the military courts of an opportunity to address that claim under proper procedures in the first instance.  Coleman v. Thompson, 501 U.S. 722, 732 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986).  Petitioner's undisputed default is a clear procedural bar to consideration of this claim by this court, unless he can show both cause for failing to raise it and ensuing prejudice, or actual innocence.  See Murray,

---

[9]   Petitioner alleges that his defense counsel, in his July 5, 2000, "Request for Clemency and Response" to the SJA's recommendation, raised the issue that Defense Exhibit C had not been transcribed verbatim.  In this first mention of this alleged error, defense counsel stated:

> [D]efense exhibit "C" was admitted as evidence during the sentencing portion of Pvt Otto's court-martial, but was not transcribed into the record of trial.  The defense believes the record of trial . . . is incomplete without the verbatim transcription of the video . . . . Several members of Pvt Otto's family and friends appear on the video and provide unique insight into Pvt Otto's background and childhood. When you watch the video play close attention to the testimony . . . ."

This video was presented as an exhibit at sentencing.  In the Request for Clemency, defense counsel noted the statements in the video "are the basis for the defense request for clemency."  After this initial reference in his request for clemency, Mr. Otto failed to present this claim to the NMCCA during either Article 66 review or in either of his timely Petitions for Grant of Review to the CAAF. It thus appears he procedurally defaulted this claim in the military courts.

13

477 U.S. at 488.

Mr. Otto has not alleged any facts indicating cause for his failure to raise this claim in the NMCCA or in his timely petitions for review to the CAAF, even though the facts underlying these claims were clearly known at the time of all his appeals. The court further finds that petitioner alleges no facts showing any prejudice to him whatsoever from the absence of a verbatim transcript of the videotape admitted as Exhibit C, or the videotape of a news account of his arrest used as an Article 32 exhibit. The court concludes this claim was not fully and properly presented to the military courts, and review by this court is precluded for that reason. Moreover, this claim is not shown to present a significant constitutional question as required by Dodson.

Petitioner raises as a separate ground that he is entitled to relief from his conviction because the SJA never responded to his allegations of legal error. Review of this ground, which was the other Grostefon issue presented for the first time in Mr. Otto's Petition for Reconsideration to the CAAF, is precluded for the same reasons as his claim that the record is incomplete.

Moreover, like the last ground, this issue appears to lack merit. The only allegation of error petitioner specifically mentions as having been ignored by the SJA is his claim discussed above that the record is incomplete. It is not even clear from the record provided that the absence of verbatim transcripts of the two videotapes in question was properly presented as an assignment of

14

error to the SJA[10]. Even if it were, however, the General Court-Martial Order entered July 20, 2000, [A&R (Doc. 7) Exhib. 16 at 139] provided: "I considered . . . the matters submitted by defense counsel dated 5 July 2000, prior to taking this action."

Furthermore, even if the incomplete record claim was presented to but not specifically addressed by the SJA, this procedural irregularity does not present a significant constitutional question under Dodson or amount to a federal constitutional violation warranting habeas corpus relief. The Government in its Response to petitioner's Motion for Reconsideration on this issue, acknowledged that the SJA was required to list all legal errors raised by the defense and provide the convening authority with a statement of its agreement or disagreement of the listed errors. However, the Government reasonably argued that since the legal error was "not meritorious and would not have foreseeably led to a favorable recommendation" by the SJA or the convening authority, it was harmless. As noted, petitioner has described no prejudice whatsoever from the absence in the record of verbatim transcripts of either of these videotapes. Petitioner is not entitled to have his court-martial conviction overturned by a civilian court because the SJA did not list and discuss an issue that has no legal merit.

Petitioner's complaint that he was denied full and fair review because the CAAF failed to hold a hearing and issue a written

---

[10] At the time the SJA made its recommendation dated June 21, 2000, petitioner obviously had not yet submitted his July response. It is also not apparent that the remarks in his request for clemency regarding these tapes amounted to an assignment of error for review by the convening authority.

15

opinion also fails to warrant habeas corpus relief. In the first place, it does not appear that petitioner at any time presented this claim to the military courts. The court notes the military provides some post-conviction avenues for collateral review. This court may not consider a claim on which all available military remedies have not been fully exhausted.

In any event, this claim has no legal merit. The section of the Military Code cited by petitioner as authority for this claim provides for review by the CAAF, but does not guarantee either a hearing or that the CAAF produce a written response to each of petitioner's legal questions. The CAAF did not violate the Military Code or other federal law, and certainly not the United States Constitution, by issuing a summary ruling on petitioner's claims without a hearing. The claims considered by the CAAF were those raised by petitioner in his supplement and briefs, and they were obviously rejected. The portions of the record provided show that petitioner was able to present his allegations of error and his Grostefon issues for review when he followed proper procedures in a timely manner. He was granted relief on some of his claims. The record does not support petitioner's conclusory claim that the military courts "refused to consider" any of his five grounds presented for review[11].

---

[11] Petitioner's recitation in his Traverse of "disturbing facts concerning appellate reviews by the NMCCA" is not shown to have any relation to his particular case, or to have been exhausted in the military courts.

16

**VOID PRETRIAL AGREEMENT CLAIM**

The court turns to petitioner's claim that the pretrial agreement in his case violated RCM 705, public policy, and his Sixth Amendment right to counsel because it contained a waiver of his pending motion to suppress. Prior to pleading guilty, petitioner had filed a motion to suppress his inculpatory "communications with a cooperative witness who was working with the (NCIS)." His motion was based upon the assertion that inculpatory statements were obtained in violation of his right to counsel because at the time his statements were made, Mr. Otto "was represented by civilian counsel on civilian drug charges pending in Indiana," and that civilian counsel was not present. <u>United States v. Otto</u>, 2005 WL 2467765, *2 (NMCCA Sept. 26, 2005, unpublished). Nevertheless, petitioner thereafter entered into a pretrial agreement, in which he agreed to "withdraw any motions presently pending before the court," and unconditionally pleaded guilty. The military judge ascertained at the plea proceedings that Mr. Otto understood and voluntarily agreed to the waiver in the agreement. He specifically discussed Mr. Otto's motion to suppress and explained that it was waivable[12]. The Memorandum of Pretrial Agreement signed by Mr. Otto, in pertinent part, provided:

> 2. I am satisfied with my defense counsel in all respects.

---

[12] In his Traverse, petitioner complains that the military courts did not discuss why the agreement was not invalid under his cited authority of <u>U.S. v. Benitez</u>, 49 M.J. 539 (NMCCA 1998). One significant difference between his case and <u>Benitez</u> is that the motion at issue in <u>Benitez</u> was not a motion to suppress.

17

> * * *
>
> 11. In return for my plea(s) of guilty . . . the convening authority agrees to withdraw the charge(s), as well as the specification(s) to which I have pled Not Guilty . . . with prejudice."
>
> * * *
>
> 15. I agree to withdraw any motions presently pending before the court.
>
> [A]ll confinement in excess of two-hundred-forty (240) months will be suspended" for ten months after the convening authority acts, and either vacated or remitted.

A&R (Doc. 7), Exhibit 22 at 179.

Petitioner's claim that this waiver provision violated public policy, RCM 705(c)(1)(B), and his right to counsel was presented in his Brief and Assignment of Error to the NMCCA dated June 27, 2002. This assignment of error was expressly considered and rejected by the NMCCA in its first opinion decided April 29, 2003. On remand, this same assignment of error was presented by petitioner and was expressly considered and rejected by the NMCCA in its opinion decided September 26, 2005. Petitioner fully briefed this claim in his Supplement to Petition for Grant of Review to the CAAF. A&R (Doc. 7), Exhib. 7. His petition for review of this alleged error was granted, and relief was denied by the CAAF. The court particularly notes the NMCCA's clear consideration and rejection of his argument that the waiver of his motion to suppress equated to a denial of his right to counsel,[13] and affirmance of that opinion by

---

[13] Petitioner attempted to frame his claim to fall within the ambit of the 705(c) prohibitions by arguing the waiver of his motion to suppress amounted to a waiver of his right to counsel. This claim was considered and soundly rejected by the military courts as petitioner's attempt "to squeeze a square peg into a round hole."

18

the CAAF. The military court found instead that Mr. Otto was provided counsel throughout his court-martial proceedings and had stated his satisfaction with counsel's representation.

The legal standards cited by the NMCCA in its last opinion on this issue were not erroneous[14]. The court further notes there is no allegation that petitioner's pleas of guilty were entered other than voluntarily with a full understanding of the rights he was surrendering. Given the amount of inculpatory information against Mr. Otto, besides the communications with Moore that he moved to suppress, the court finds it clear that petitioner received a favorable plea bargain and fully availed himself of its benefits. This court has thoroughly reviewed the records including the pleadings and briefs filed by petitioner and the government together with the rulings and opinions of the military courts. From this record, the court is convinced that petitioner's arguments concerning the waiver of motions provision in his pretrial agreement were fully and fairly considered by the military courts.

For all the foregoing reasons, the court finds Mr. Otto is not

---

[14] See Tollett v. Henderson, 411 U.S. 258, 267 (1973)("When a criminal defendant has solemnly admitted in open court that he is guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); Boykin v. Alabama, 395 U.S. 238, 243 (1969)(knowing and voluntary guilty plea waives the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront one's accusers); Johnson v. Zerbst, 304 U.S. 458, 465 (1938)(Sixth Amendment right to counsel may be waived); Whitehurst v. Senkowski, 485 F.Supp.2d 105, 117-118 (N.D.N.Y. 2007)(Ordinarily, a defendant's unconditional, intelligent and voluntary guilty plea extinguishes his right to pursue his pretrial motions, even those to suppress evidence.), citing Tollett, 411 U.S. at 266-67 and United States v. Broce, 488 U.S. 563, 573-74 (1989), and other cases cited therein; United States v. Wise, 179 F.3d 184, 186 (5th cir. 1999)(denial of motion to suppress waived by unconditional guilty plea); see also U.S. v. Jacobo Castillo, 496 F.3d 947, 954 (9th Cir. 2007), and cases cited therein.
.

entitled to federal habeas corpus relief.

**IT IS THEREFORE ORDERED** that this petition for writ of habeas corpus is denied.

DATED:  This 7th day of March, 2008, at Topeka, Kansas.


s/RICHARD D. ROGERS
United States District Judge